# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TRACEY CLEVENGER,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:09-CV-01807-RDP |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Tracey Clevenger brings this action pursuant to Sections 205(g) and 1613(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Procedural History**

Plaintiff filed her applications for disability, DIB, and SSI under Titles II and XVI of the Act on July 14, 2006, alleging an onset date of disability of July 1, 2001.[1] (Tr. 69, 88-92). Plaintiff's applications were denied on October 18, 2006. (Tr. 70-74). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 26, 2006. (Tr. 75). A hearing was held before ALJ Jerome Munford on November 26, 2008. (Tr. 30-68). In his February 18, 2009 decision, the ALJ

---

[1] Plaintiff's alleged onset date of disability was subsequently amended to January 4, 2005. (Tr. 35-36).

determined that Plaintiff suffered from the following severe impairments of: Guillain-Barré syndrome; major depressive disorder, recurrent, mild; histrionic personality disorder; hepatitis B; and fibromyalgia. (Tr. 19, 22). It was the ALJ's finding that none of these impairments, singly or in combination, are severe enough to meet one of the impairments listed in App'x 1of 20 C.F.R. § 416.920(d), 416.985 and 416.926. (*Id.*). Based on the testimony of the vocational expert ("VE"), Dan Kinard, the ALJ determined that although Plaintiff is precluded from performing past relevant work, there are other jobs existing in significant numbers in the national economy for which Plaintiff retains the residual functioning capacity ("RFC") to perform. (Tr. 21). Based on these findings, the ALJ subsequently determined that Plaintiff was not disabled as defined under the Act. (Tr. 23). Plaintiff requested a review of the ALJ's decision on March 5, 2009. (Tr. 4). The Appeals Council denied Plaintiff's request for review on July 8, 2009. (Tr. 1-3). On February 19, 2010, Plaintiff filed a complaint for civil action in this court requesting judicial review of the ALJ's decision. (Doc. #9).

Plaintiff was born on September 12, 1961, obtained a high school diploma, and completed one year of college. (Tr. 36, 69). Plaintiff was previously employed as a secretary from 1979 until 2001. (Tr. 98-109). Plaintiff's medical records relating to her alleged inability to work date back to February 1996. (Tr. 185-87). Plaintiff claims she is unable to engage in substantial gainful activity due to Guillain-Barré syndrome, depression, trouble with memory and concentration, fatigue, fibromyalgia, and chronic diarrhea. (Tr. 37, 40, 114). Plaintiff's medical diagnoses include: past Guillain-Barré syndrome, major depressive disorder, pain disorder with psychological factors, hepatitis B, and histronic personality features. (Tr. 217-21). Plaintiff testified that the pain resulting from these medical problems has significantly reduced her ability to work since June 2001. (Tr. 36).

Dr. Subhash Bajaj treated Plaintiff on several occasions from January 1996 to October 2008. (Tr. 180-84, 185-86, 252-55, 260).  In January 1996, Plaintiff sought treatment from Dr. Bajaj for intermittent headaches and elevated cholesterol.  (Tr. 185-86).  In January 2005, Dr. Bajaj treated Plaintiff for abdominal pain and opined that her abdominal pain was suggestive of costochondritis. (Tr. 183-84).  Dr. Bajaj recommended "conservative management" to treat Plaintiff's pain and suggested she return for a follow-up visit. (*Id.*).  In February 2005, Plaintiff returned to Dr. Bajaj seeking follow-up treatment for her abdominal pain.  (Tr. 182).  Plaintiff reported that after monitoring her symptoms for a month, the pain was under control. (*Id.*).  Dr. Bajaj encouraged Plaintiff to continue monitoring her symptoms closely and to return for a six month follow-up. (*Id.*).

In August 2005, Plaintiff returned to Dr. Bajaj for a follow-up.  (Tr. 181).  Dr. Bajaj found that Plaintiff's abdominal pain was under control. (*Id.*).  In September 2007, Dr. Bajaj performed an outpatient colonoscopy on Plaintiff to determine the cause of frequent diarrhea and pain in her abdomen. (Tr. 252-55).  The colonoscopy procedure revealed a normal ileum, a single sessile polyp found in the sigmoid which was removed by snare cautery polypectomy, multiple diminutive hyperplastic recto-sigmoid polyps, and internal hemorrhoids. (Tr. 252). Dr. Bajaj advised Plaintiff to go through a bowel re-training program, avoid aspirin and anti-inflammatory medications, to follow-up the results of her biopsy specimens, and to make a follow-up appointment. (*Id.*).  The material from the colonoscopy was submitted to Dr. James A. Davis of Cunningham Pathology who diagnosed Plaintiff with tubular adenoma and benign colonic mucosa, negative for microscopic colitis, based on a sigmoid biopsy of the colonoscopy material. (Tr. 254).  In October 2008, Dr. Bajaj treated Plaintiff for constipation and instructed her to go through a bowel retraining program

and return for a six week follow-up. (Tr. 260). At the time of this visit, Plaintiff's medications included: Paxil, Sinemet, and Neurontin. (*Id.*).

In June 2006, Plaintiff visited her gynecologist, Dr. William Summers, for an annual exam. (Tr. 196). During this visit, Plaintiff presented complaints of difficulty sleeping for which Dr. Summers prescribed Trazodone. (*Id.*).

In September 2006, Dr. Charles Carnel examined Plaintiff for complaints of pain in her legs, feet, and hands. (Tr. 212-16). In Dr. Carnel's general findings, he determined that Plaintiff was inconsistent in some of her actions in the motor strength examination. (Tr. 215). Dr. Carnel also found that Plaintiff was hyperactive and unable to sit still during the examination. (*Id.*). Ultimately, Dr. Carnel confirmed Plaintiff's diagnosis of Guillain-Barré syndrome and opined that he could not rule out neuropathic pain of her bilateral upper and lower extremities. (Tr. 216).

In September 2006, consultive examiner Dr. Richard Beth performed a comprehensive psychological evaluation of Plaintiff at Adult Adolescent Psychology Associates in Birmingham, Alabama. (Tr. 217-21). Dr. Beth reviewed Plaintiff's history of illness, her personal and family history, and her daily activities. (*Id.*). Plaintiff explained that her daily activities included showering, performing household chores, shopping, cooking, occasionally talking to friends on the phone, and sometimes going to church. (Tr. 220). During his exam, Dr. Beth also conducted a mental status exam of Plaintiff. (Tr. 219-21). Based on the results of the mental exam, Dr. Beth concluded that Plaintiff suffered from major depressive disorder, pain disorder with psychological factors, histronic personality features, hepatitis B, and Guillain-Barré syndrome. (*Id.*).

In October 2006, Plaintiff received a psychiatric review that was conducted by Dr. Samuel Popkin. (Tr. 223-36). Dr. Popkin determined that Plaintiff suffers from affective and personality

4

disorders. (Tr. 223). He also determined that Plaintiff suffers from major depression. (Tr. 226). Dr. Popkin noted that Plaintiff had a Paxil prescription and found that her allegations regarding the severity of her condition were only partially credible. (Tr. 235). Dr. Popkin also conducted a mental RFC assessment of Plaintiff in October 2006, finding that Plaintiff could maintain concentration and attention for two hours with customary rest breaks. (Tr. 237-40).

In November 2007, Dr. Mukul Mehra treated Plaintiff for abdominal pain and bloating. (Tr. 257-58). Dr. Mehra determined that Plaintiff suffered from diarrhea and recommended that she avoid dairy products. (*Id.*). For Plaintiff's bloating, Dr. Mehra prescribed rifaximin. (*Id.*).

In June 2008, medical examiner Dr. Bruce Romeo examined Plaintiff at the Alabama Center for Occupational Medicine & Prevention. (Tr. 242-50). Dr. Romeo reviewed Plaintiff's medical and social history, then proceeded to conduct a physical examination. (*Id.*). Dr. Romeo determined that Plaintiff suffered from generalized pain, weakness, and fatigue without objectively identifiable etiology. (Tr. 245). Dr. Romeo opined that Plaintiff had full functional recovery from Guillain-Barré syndrome and that it was not a plausible explanation for her current symptomatology. (*Id.*). Dr. Romeo also performed a range of motion test and concluded that Plaintiff's cervical spine, dorsolumbar spine, shoulder, elbow, forearm, hip, knee, ankle, wrist, hands, and fingers all had a normal range of motion. (Tr. 246-47). He determined that there was no limit on Plaintiff's ability to stand, walk, or sit. (Tr. 248). He found that Plaintiff could constantly lift and carry 10 pounds, frequently lift and carry 25 pounds, and occasionally lift and carry 40 pounds. (*Id.*). Dr. Romeo also determined that Plaintiff has the ability to constantly push and pull with both arms and legs, climb, balance, stoop, kneel, crouch, crawl, handle, finger, feel, talk, hear, and reach overhead. (Tr. 249).

**II.     ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 4, 2005, her amended alleged onset date of disability. (Tr. 9). The ALJ further determined that

Plaintiff suffers from several severe impairments including: Guillain-Barré syndrome, major depressive disorder, histronic personality disorder, hepatitis B, and fibromyalgia. (Tr. 19). The ALJ determined that these impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of 20 C.F.R. Part 404. (*Id.*).

During the hearing, the ALJ called VE Dan Kinard to testify. (Tr. 21, 54-67). The VE determined that Plaintiff's past work consisted of jobs that were classified as skilled and sedentary in physical demands. (Tr. 55). The VE determined an individual with Plaintiff's RFC would require transferable skills of work at the sedentary level and such transferable skills include: scheduling, record keeping, monitoring, keyboarding, basic computer skills, attention to detail, supervising, instructing, planning, and organizing. (*Id.*). The VE further determined that there are a significant number of related work opportunities at Plaintiff's skill and physical level existing in the national economy. (Tr. 56-62). Based on the testimony of the VE and consideration of the record, the ALJ determined that although Plaintiff is unable to perform her past relevant work, she retains the RFC to perform sedentary work. (Tr. 23). Based on his findings, the ALJ concluded that Plaintiff was not disabled at any time through the date of his decision. (Tr. 23-24).

**III.    Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed. (Pl. Br. at 4). Plaintiff asserts that the ALJ failed to properly evaluate the credibility of her pain testimony and that his assessment was inconsistent with the Eleventh Circuit Pain Standard. (Pl. Br. at 5).

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.      Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that the proper legal standards were applied.

8

     **A.     The ALJ Properly Evaluated Plaintiff's Credibility, and This Evaluation was Consistent with the Eleventh Circuit Pain Standard.**

Plaintiff maintains that the ALJ failed to assess her credibility in a manner consistent with the Eleventh Circuit Pain Standard. (Pl. Br. at 5). Specifically, Plaintiff alleges that the ALJ's rationale for discrediting her complaints of pain is not supported by substantial evidence because he gave a significant amount of weight to the fact that she had not sought consistent medical treatment and gave too much weight to the medical opinion of Dr. Romeo, whom she alleges conducted an "incomplete examination." (Pl. Br. at 7-8).

Credibility determinations are made by the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, the Eleventh Circuit has held that the ALJ must provide explicit articulation of the reasons behind his decision to discredit a claimant's subjective pain testimony. *Id.* Specifically, the Eleventh Circuit Pain Standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The ALJ's decision directly cites the Eleventh Circuit Pain Standard in the portion of his decision immediately preceding his analysis in which he evaluates Plaintiff's credibility regarding her psychological and physical impairments. (Tr. 20). In determining that Plaintiff's descriptions of her impairments and the limitations of those impairments were not fully credible, the ALJ relied upon the medical evidence in the record, including reports from Plaintiff's examining physicians. (*Id.*). Although Plaintiff described her psychological impairment of depression as disabling (*see* Tr.

48), the physicians who examined her described her depression as mild and predicted that her symptoms from the depression would likely cause no more than difficulty in understanding, remembering, and carrying out instructions in an occupational situation. (Tr. 20, 220-21, 235, 239). In evaluating the credibility of Plaintiff's alleged physical impairments and limitations, the ALJ considered the results of the medical tests Plaintiff underwent during the period of her alleged disability. (Tr. 20-21). The ALJ reviewed tests and x-rays of Plaintiff's hands, spine, kidney, uterer, and bladder that yielded normal results. (Tr. 20). The ALJ also noted that there were inconsistencies in tests that evaluated Plaintiff's motor and sensory skills. The ALJ relied upon Dr. Romeo's findings found that there were no restrictions on Plaintiff's ability to sit, stand, walk, push, pull, climb, balance, stoop, kneel, crouch, crawl, handle, feel, talk, hear, or reach overhead. (Tr. 20-21, 248-49). After considering these test results, the ALJ concluded that if Plaintiff complies with her assigned RFC, the pain she experiences should impose no more than moderate limitations on her ability to engage in basic work activities. (Tr. 21).

  Although Plaintiff maintains the ALJ erred in relying upon Dr. Romeo's examination which she describes as "incomplete," the record indicates that Dr. Romeo conducted a thorough examination of Plaintiff. (*See* Tr. 242-50). Additionally, Dr. Romeo's determination that Plaintiff was not limited in her physical abilities was based on a standard Medical Source Opinion Form which states "[t]he following opinion - BASED ON THE OBJECTIVE FINDINGS FROM THE HISTORY, PHYSICAL EXAMINATION AND/OR REVIEW OF MEDICAL DOCUMENTS - is an assessment of this individual's ability to do work-related activities on a day-to-day basis in a regular work setting." (Tr. 248). This evaluation is a standard form used for determining disability, and certainly is not a basis for discrediting Dr. Romeo's examination.

In evaluating Plaintiff's mental and physical capabilities, the ALJ also considered Plaintiff's daily activities which were included in her testimony. (Tr. 13). Plaintiff testified that on a typical day she talks on the phone with her mother, gets her children ready for school, performs household chores, rests and takes naps, and occasionally drives. (Tr. 13, 53-54).

The ALJ considered medical evidence including test results and physicians' reports as well as Plaintiff's own testimony regarding her daily activities in his determination that her subjective complaints regarding her impairments, limitations, and pain were inconsistent with other sources of evidence. (Tr. 20). Because the ALJ considered several sources of evidence in reaching his determination that Plaintiff's subjective complaints were not fully credible, his decision was based on substantial evidence. Therefore, the court finds that Plaintiff's argument is without merit.

**B.     The ALJ Adequately Developed the Record.**

Plaintiff presents a last-effort argument in the conclusion of her brief alleging that the ALJ failed to fully and fairly develop the record. (Pl. Br. at 9). Although this argument is not supported by factual evidence or related law, the court will nonetheless consider it as an argument in support of reversal and will address it on the merits.

The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial," and that the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). However, failure to further develop the record does not constitute reversible error "if the ALJ had sufficient evidence on which to base his decision." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 417 (11th Cir. 2006); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

In his decision, the ALJ considered the medical opinions and evaluations of Dr. Bajaj, Dr. Summers, Dr. Carnel, Dr. Beth, Dr. Popkin, and Dr. Romeo. (Tr. 13-19). The ALJ also considered all of Plaintiff's impairments, limitations, and complaints. (*Id.*). Because the ALJ considered all of the medical evidence in the record, as well as Plaintiff's testimony and relied upon this information in his analysis, it is evident that he had substantial information on which to base his decision. Therefore, the court finds that the ALJ fulfilled his duty to adequately develop the record.

**VI.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this     17th     day of December, 2010.

  **R. DAVID PROCTOR**
  UNITED STATES DISTRICT JUDGE